[Crim. No. 36413. Second Dist., Div. Four. Apr. 8, 1980.]

In re THOMAS WAYNE WESTON on Habeas Corpus.

298

COUNSEL

Thomas Wayne Weston, in pro. per., for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gen-

eral, Edward T. Fogel, Jr., and Richard L. Walker, Deputy Attorneys General, for Respondent.

**OPINION**

**FILES, P. J.**—The habeas corpus petition which commenced this proceeding challenges the legality of an order of the superior court terminating a mentally disordered sex offender (MDSO) commitment and sentencing petitioner to state prison. It appears that the superior court bypassed the important statutory procedures which were designed to afford due process to the offender and provide adequate and current information to the court before so significant a decision was made; and for that reason the sentence must be vacated.

I   *Procedural Background.*

On May 23, 1974, an information was filed in case No. A 307871 charging the petitioner with kidnaping (Pen. Code, § 207) and assault with intent to rape (Pen. Code, § 220). He pleaded guilty to a violation of Penal Code section 245 (assault with force likely to cause great bodily injury) a lesser, related offense. Criminal proceedings were suspended and probation was granted for a period of 4 years, the first 180 days to be served in county jail.

On August 25, 1975, another multiple count information was filed as case No. A 320100. Petitioner pleaded guilty to violations of Penal Code section 261, subdivision 3 (rape by threat of great bodily harm) and 245, subdivision (a) (assault with a deadly weapon) and admitted the use of a firearm (Pen. Code, § 12022.5). Probation was thereupon revoked in case No. A 307871, criminal proceedings were adjourned, and MDSO civil commitment proceedings were instituted. On December 29, 1975, the petitioner was certified by the superior court to be a mentally disordered sex offender and committed to the State Department of Health pursuant to section 6316 of the Welfare and Institutions Code. All statutory references hereafter are to the Welfare and Institutions Code.

On July 27, 1978, the Director of Patton State Hospital, where petitioner was confined, submitted to the superior court a letter of intent to

place petitioner on outpatient treatment by Los Angeles County Mental Health Services. The letter requested court approval of the plan pursuant to section 6325.1, subdivision (a).

On August 30, 1978, that request came on for hearing in the Los Angeles Superior Court. Petitioner was present with counsel, who argued in favor of the outpatient treatment proposal. The court announced that it had considered the reports submitted by the State Department of Health and the Patton State Hospital, and the reports which had preceded petitioner's 1975 commitment. No evidence was offered or received. A deputy district attorney was present, but made no comment. At the conclusion of the hearing the court sentenced petitioner to state prison for the term prescribed by law in cases Nos. A 307871 and A 320100, the counts in the latter case to run consecutively to each other and to the sentence in the former case.

## II  Statutory Provisions.

The scope of the trial court's authority when called upon to rule on a request for outpatient treatment must be viewed in relation to sections 6325, 6325.1, 6325.2 and 6327 governing MDSO post commitment proceedings.

Section 6325 establishes procedures whereby the committing court may find a person previously committed as an MDSO no longer to be such and terminate his status as an MDSO. The prerequisite for court proceedings under this section is the filing of the certified opinion of the director or superintendent of the mental health facility where the person has been placed stating that the person either "(a)...will not benefit by further care and treatment in the hospital or facility and is not a danger to the health and safety of others, or (b) has not recovered, and...is still a danger to the health and safety of others." That opinion must be accompanied by a report, diagnosis and recommendation concerning the person's future care, supervision or treatment.

Section 6325.2 provides that when such a recommendation is made under section 6325 "either party may move for a new examination and hearing pursuant to sections 6306 through 6318...." This means, among other things, that a person who wishes to contest the recommendation of the director or superintendent is entitled to an examination by at least two court-appointed psychologists or psychiatrists who will pro-

vide their independent reports, and who will attend the hearing and testify. (§§ 6307, 6308.)

Section 6325.1, under which petitioner's August 30, 1978, hearing was held, provides in subdivisions (a): "If the superintendent of the state hospital or other facility to which the person is committed or transferred as a mentally disordered sex offender is of the opinion that a person has improved to such an extent that he is no longer a danger to the health and safety of others and will benefit from outpatient treatment, the superintendent may file with the committing court an announcement of intent to place the person on outpatient treatment . . . . Within 15 days after receipt of the announcement of intent, after notice to the prosecuting attorney and to the attorney of record for the person, the court shall, after a hearing in open court, approve or disapprove the announcement of intent. If the approval of the court is given, the person shall be treated as an outpatient. . . ."

Subdivision (b) provides that when a person's outpatient supervisor and the person in charge of the facility agree the outpatient is no longer an MDSO, the person in charge is required to certify his opinion to the committing court. Thereupon, the committing court is required to "calendar the case for further proceedings pursuant to Section 6325."

Subdivision (c) of section 6325.1 deals with returning an outpatient to inpatient status.

Section 6327 establishes a procedure whereby the committing court may upon its own motion or on motion by or on behalf of the person committed, require the superintendent of the facility to which the person was committed to forward to the court his opinion under (a) or (b) of section 6325, with supporting documents. After that the court may order the return of the person to the court for a hearing to be conducted in accordance with sections 6306 through 6314.

Two pertinent observations follow from this review of the statutes:

■ First, when the superintendent of a state hospital submits to the court an intent to place the person on outpatient treatment, the court is required to "approve or disapprove the announcement of intent." The superintendent's announcement does not give notice that any other issue will be considered by the court. The statute does not authorize the court to take any other action.

■ Second, when a proposal to terminate the MDSO proceedings is initiated either by the head of the treatment facility (§ 6325) or by the court (§ 6327), an entirely different set of procedural rules applies for the purpose of assuring that the court has adequate current information and that the committed person will have an opportunity to challenge the opinion of the treating facility if the person desires to do so.

## III  *Application to This Case.*

■ The Attorney General suggests that the trial court has broad discretion under section 6325.1, subdivision (a), because the statute "does not instruct on the procedures to be employed in the event that the request for outpatient treatment is denied. . . ." The most reasonable interpretation of section 6325.1 is that no other proceedings are required or authorized. If the request is denied, the person remains an inpatient.

It is also contended that the opinion of the superintendent, expressed in the request for outpatient treatment, that the person "has improved to such an extent that he is no longer a danger to the health and safety of others" establishes that he is no longer an MDSO, citing the definition of MDSO in section 6300 as a person "dangerous to the health and safety of others." The argument seems to be that when the superintendent asked to put petitioner on outpatient status, the superintendent was certifying that petitioner was no longer an MDSO; and therefore at the hearing authorized by section 6325.1, subdivision (a), the trial court was entitled to terminate the MDSO commitment and sentence petitioner to prison without notice or hearing.

That suggested interpretation of section 6325.1 cannot be reconciled with the legislative intent, as expressed in sections 6325, 6325.2 and 6327, to afford the person a full hearing on current, independent expert opinion before the MDSO commitment may be terminated. Moreover, the argument gives undue importance to the superintendent's opinion that the person is no longer dangerous to others. That opinion is only a fragment of the information which the court is required to have before terminating the MDSO commitment. Such a opinion is not an ascertainment of a demonstrable fact: it is a prediction of future human behavior. Such a prediction must be regarded as tentative under the best of circumstances. A prediction of how a person will behave in a free society, based upon observations during years of institutional super-

vision, is even more tentative. The statute does not make that prediction, by itself, the basis of decision.

Section 6325.1 provides for locally supervised outpatient treatment upon court approval of the superintendent's opinion that the person is no longer dangerous "and will benefit from outpatient treatment." Section 6325 authorizes termination of a commitment following an opinion that "the person will not benefit by further care" and is not a danger. The prospect that the person may benefit by further care and treatment is a significant statutory criterion for keeping the person under MDSO commitment.

The Attorney General also relies upon an apparent cross-reference to section 6325.1 which appears in the second sentence of section 6325[1] to support the contention that a denial of outpatient treatment automatically brings into operation section 6325. Examination of the history of these sections demonstrates that the reference to section 6325.1 is actually a reference to a section which was formerly given that number but which has since been renumbered 6325.2. The second sentence of section 6325 was added by Statutes 1976, chapter 1101, section 13.1, to tell the trial court what it must do upon receiving the report of the superintendent or director that the patient would not benefit from further treatment. The same chapter, in section 13.5, added to the Welfare and Institutions Code a section numbered 6325.1, which provided that when the patient was returned to the committing court pursuant to section 6325, either party might move for a new examination and hearing pursuant to sections 6306 through 6318.

---

[1] Welfare and Institutions Code section 6325: "Whenever a person who is committed for an indeterminate period to the department for placement in a state hospital or to a county mental health director for placement in an appropriate facility (a) has been treated to such an extent that in the opinion of the superintendent or county mental health director the person will not benefit by further care and treatment in the hospital or facility and is not a danger to the health and safety of others, or (b) has not recovered, and in the opinion of the superintendent or county mental health director the person is still a danger to the health and safety of others, the superintendent of the hospital or county mental health director shall file with the committing court a certification of his opinion under (a) or (b), as the case may be, including therein a report, diagnosis and recommendation concerning the person's future care, supervision or treatment and shall furnish a copy thereof to the county mental health director. Upon the expiration of the time for making a motion pursuant to Section 6325.1, upon the denial of such motion, or upon the entry of a finding that the person is no longer a mentally disordered sex offender after a hearing pursuant to Section 6325.1, the committing court shall thereupon order the return of the person to said committing court and shall thereafter cause the person to be returned to the court in which the criminal charge was tried to await further action with reference to such criminal charge."

".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    ."

What the Legislature overlooked at that time was that the Welfare and Institutions Code already contained a section 6325.1 dealing with another subject.

This oversight was partially corrected by Statutes 1977, chapter 691, sections 7 and 8, which reenacted the substance of the original section 6325.1 as 6325.1, and reenacted the 1976 section as 6325.2. However, the Legislature failed to correct the cross-reference in section 6325.

The present section 6325.1 deals with the transfer of an MDSO from one hospital to another, or from a hospital to outpatient treatment. Sections 6325 and 6325.2 deal with the termination of MDSO treatment. Section 6325.2 is the section which gives the parties the option of new examination and hearing if the person is brought back to the court for a decision whether MDSO treatment shall be discontinued. In this context the cross-reference in section 6325 is to the procedure described in section 6325.2.

IV  *Disposition.*

Since the termination of petitioner's MDSO commitment and the imposition of sentence on August 30, 1978, were without any statutory authorization, both of those judicial acts must be vacated. Petitioner's status is that of a person committed as an MDSO, who must be returned to Patton State Hospital because the director's proposal for outpatient treatment was disapproved. Both the hospital director and the superior court are free to take such further action as appears appropriate under the law as applied to whatever facts appear upon a current evaluation of petitioner.

The petition is granted. The order of August 30, 1978, resuming criminal proceedings and the sentence imposed August 30, 1978, are vacated. Petitioner is ordered delivered to the Patton State Hospital.

Kingsley, J., and Jefferson (Bernard), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.